**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| LOUIS MILES, Jr., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-950 |
| | ) | |
| OFFICER DICKEY, et al., | ) | |
| | ) | |
| Defendant | ) | |

**RESPONSE, WRITTEN REPORT, AND ANSWER OF DEFENDANTS OFFICER DICKEY & OFFICER M. MCCORD**

COME NOW the Defendants, Officer Dickey ("Dickey") and Officer M. McCord ("McCord") by and through undersigned counsel and, in accordance with this Court's Order's of October 29, 2007, file this Response, Written Report and Answer in response to Plaintiff's Complaint.

**PLAINTIFF'S COMPLAINT:**

This action is being brought by Plaintiff Louis E. Miles, Jr. who, on September 10, 2007, was arrested and charged by City of Montgomery for Burglary in the third degree and Theft of Property in the first degree. The burglary charge was based on Plaintiff knowingly entering or remaining in Main Line Supply, with the intent to commit a crime. Plaintiff was found exiting the rear of the business with two boxes of brass fittings in his hands. Alabama online court records indicate that the plaintiff is currently incarcerated in the Montgomery County Detention facility awaiting trial on four cases: DC-2007-3088 (Theft of Property 1st), DC-2007-3089 (Burglary 3d), DC-2007-3759 (Burglary 3d), and DC-2007-3760 (Theft of Property 1st).

In this action, Plaintiff alleges that Defendants Dickey and McCord violated his Constitutional rights against false arrest/imprisonment, excessive force, and inadequate medical

care. It appears from the Recommendation of the Magistrate Judge (Doc. No. 15) entered on November 14, 2007 that there has been a recommendation that the false arrest claim be dismissed.

**DEFENDANT'S RESPONSE:**

**I. FACTS**

On September 10, 2007 at approximately 1:26 a.m., a call went out in reference to a business alarm with the front beam and back door as points of indication. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Defendant, Dickey and his K-9 partner Zak were dispatched to 3996 Birmingham Highway, Main Line Supply Company in reference to the alarm. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Upon arrival, Dickey observed the gate leading to the rear of the property partially opened and the pad lock cut in half. *(DX 1, Affidavit of Cpl. W.B. Dickey).* While waiting for backup to arrive, Dickey heard several noises coming from inside the business. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Dickey made his way to the back of the business and observed a teal colored Jeep Cherokee near the rear door with its back tailgate hatch open and the back door to the business open. *(DX 1, Affidavit of Cpl. W.B. Dickey).* When he arrived at the jeep, he observed several boxes of brass fittings inside. *(DX 1, Affidavit of Cpl. W.B. Dickey).* In addition, he observed a silhouette of a subject inside the business reflecting off the light from a coke machine as it moved. *(DX 1, Affidavit of Cpl. W.B. Dickey).* While standing beside the jeep Dickey saw a Miles start walking toward the door with an unknown object in his hands. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Dickey observed Miles exiting the building with two white boxes of brass fittings. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Dickey gave his standard K-9 warning three times at which time Miles dropped the property and attempted to flee back inside the business. *(DX 1, Affidavit of Cpl. W.B. Dickey).* At this time, Zak was released due to the subject refusing to comply with the warnings. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Zak engaged the subject on his left arm before he was able

to make it back inside the business. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Miles began to strike the dog with his fist and attempted to pull away, causing the dog to engage and bite his right arm. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Miles was told several times to stop fighting with Zak and to lie down on the ground. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Miles then complied and lay on the ground. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Dickey then gave the command for Zak to disengage and return to him. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Once Dickey gave the command, Zak disengaged and Miles was taken into custody. *(DX 1, Affidavit of Cpl. W.B. Dickey).* Medics were called and Montgomery Fire Department Medics responded to the scene. *(DX 2, Montgomery Fire Department Emergency Medical Run Report).* Miles was treated for small lacerations and punctures. *(DX 2, Montgomery Fire Department Emergency Medical Run Report).* Miles' wounds were wrapped and he was transported to Jackson Hospital for stitches by the Montgomery Police Department. *(DX 2, Montgomery Fire Department Emergency Medical Run Report).*

After leaving Jackson Hospital, Miles was taken to the Montgomery Municipal Jail where he was held for several outstanding capias warrants. Jeffrey King secured warrants against Miles for Burglary in the 3rd Degree and Theft of Property in the 1st Degree. McCord served warrants on Miles while he was being held in the Montgomery Municipal Jail. *(DX 3, Affidavit of Detective M. McCord).* McCord escorted Miles to the Detective Division where he was read his Miranda Rights. *(DX 3, Affidavit of Detective M. McCord).* Miles voluntarily gave a digital statement to McCord confessing to the offense. *(DX 3, Affidavit of Detective M. McCord).* Miles was then taken to booking to be processed and placed in the Montgomery Municipal Jail on four outstanding capiases with a hold for the Montgomery County Detention Facility. *(DX 3, Affidavit of Detective M. McCord).*

At the end of Miles's confession, he stated that he needed medical treatment. *(DX 3, Affidavit of Detective M. McCord).* When Miles gave his confession, he had just returned from the hospital, where his injuries had been treated and wrapped. *(DX 3, Affidavit of Detective M. McCord).* After his confession, he was taken immediately to the jail, where any necessary medical needs could be provided. *(DX 3, Affidavit of Detective M. McCord).* Miles was booked into the Montgomery City Jail at 7:08 a.m. on September 10, 2007. *(DX4, Montgomery Municipal Jail Inmate Records for Louis Miles).* Records indicate that Miles was treated in the Montgomery Municipal Jail by the jail nurse on September 11, 2007. *(DX 4, Montgomery Municipal Jail Inmate Records for Louis Miles).* Miles was released to the custody of the Montgomery County Detention Facility at 8:43 p.m. on September 11, 2007, his stay in the Montgomery City Jail lasting thirty-seven hours and thirty-five minutes (37:35). *(DX 4, Montgomery Municipal Jail Inmate Records for Louis Miles).*

## I.    EXCESSIVE FORCE CLAIM

Plaintiff contends that Defendants committed the tort of assault and battery and by implication violated his Fourth Amendment Constitutional Right to be free of unreasonable search and seizures and the use of excessive force.

When an excessive force case arises in the context of an arrest or investigatory stop, it is considered in the context of the Fourth Amendment's guarantee against unreasonable seizures. Graham v. Conner, 490 U.S. 386, 394 (1989) (holding that excessive force claims are properly analyzed under the Fourth Amendment and not under the substantive due process standard). The Fourth Amendment's "objective reasonableness" standard is applied, which requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment

interests' against the countervailing governmental interests at stake." Id. at 395-396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985).

> The question the court must answer is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent." [*Graham*, 490 U.S. at 397]. The Supreme Court's Fourth Amendment jurisprudence has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. Consequently, the proper application of the "objective reasonableness" test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Furthermore, the reasonableness of the force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. The court must allow for the fact that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving..." *Id*. at 397.

Hendon, 163 F. Supp.2d. at 1322.

The Eleventh Circuit has provided further guidance. When determining whether an officer's use of force was objectively reasonable, the court should consider, "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and (4) whether the force was applied in good faith or maliciously and sadistically." Moore v. Gwinnett County, 967 F.2d 1495, 1498 (11th Cir. 1992) *quoting* Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986).

## II. CRUEL & UNUSUAL PUNISHMENT

In addition to his excessive force claim, Plaintiff is alleging cruel and unusual punishment. The plaintiff alleges a lack of medical care as the basis for such a claim which occurred while he was a pretrial detainee. As such, the claim must be analyzed under the fourteenth rather than eighth Amendment. The Eleventh Circuit has held, however, that "in

regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir.1985). In Estelle v. Gamble, 429 U.S. 97, 101, 97 S. Ct. 285, 289 (1976), the Supreme Court held that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104, 97 S.Ct. 285 (quotation marks and citation omitted); *see* Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir.1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir.1999) *citation omitted*.

For an inmate to maintain a § 1983 action for a violation of the prohibition against cruel and unusual punishment and to show that a prison official acted with deliberate indifference to serious medical needs, the inmate must satisfy both an objective and a subjective inquiry. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir.2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir.1995). First, a plaintiff must set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farmer, 511 U.S. at 834, 114 S.Ct. 1970; McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363.

**1. Serious Medical Need**

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)

(quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). Such a

medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"

Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) *quoting* Farmer v. Brennan, 511 U.S.

825, 834 (1994).

 The plaintiff in this case suffered puncture wounds inflicted by a police dog. Plaintiff

had been treated at Jackson Hospital immediately after his arrest and prior to his questioning by

McCord, at the end of which he made some request for medical treatment.

  **2. Deliberate Indifference**

 "A prison official cannot be found deliberately indifferent under the Eighth Amendment

'unless the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference.'" Farrow, 320 F.3d at 1245

*quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994) *emphasis removed*. "Deliberate

indifference has three components: (1) subjective knowledge of a risk of serious harm; (2)

disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley,

182 F.3d 1248, 1255 (11th Cir. 1999). "Medical treatment that is 'so grossly incompetent,

inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness'

constitutes deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995)

*quoting* Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

 The plaintiff was taken to the City jail and booked in immediately after his request for

medical care. In fact, records show that he saw the nurse at least once during his approximate

day-and-a-half incarceration. Given that plaintiff was taken to the hospital and treated by a

doctor immediately before being taken to jail, and he saw the jail nurse the next day, it cannot be said that his medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness." Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995)

Respectfully submitted this the 7th day of December, 2007.

/s/ Wallace D. Mills
Wallace D. Mills (MIL090)
Attorney for Defendants

**OF COUNSEL:**
**City of Montgomery**
**Legal Department**
103 N. Perry St.
Montgomery, AL 36104
(334) 241-2050
(334) 241-2310 - facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. Mail, postage prepaid and properly addressed on this 7th day of December, 2007 to the following:

Louis E. Miles, Jr.
AIS 138374
Montgomery County Detention Facility
P.O. Box 4599
Montgomery, AL 36103

/s/ Wallace D. Mills
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **LOUIS E. MILES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:07-CV-950-MHT** |
| | ) | |
| **MONTGOMERY CITY POLICE DEPT., et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF CORPORAL W.B. DICKEY**

**STATE OF ALABAMA** )

**COUNTY OF MONTGOMERY** )

Before me, a Notary Public in and for said State and County, personally appeared W.B. Dickey and, after first being duly sworn by me, did depose and state as follows:

My name is W.B. Dickey and I am over nineteen (19) years of age. I am currently employed as a Corporal with the Montgomery Police Department, and assigned to Third Shift Patrol. It is in that capacity that I state the following:

On September 10, 2007 at approximately 1:26 a.m., a call went out in reference to a business alarm with the front beam and back door as points of indication. In reference to this alarm, my partner and I were dispatched to 3996 Birmingham Highway, Main Line Supply Company. Upon arrival, I observed the sliding front gate leading to the rear of the property was partially opened and the pad lock had been cut in half. While standing on the east side of the building waiting for backup to arrive, I heard several noises coming from inside the business. I then made my way to the back of the business and observed a teal colored Jeep Cherokee near the rear door with its back tailgate hatch open and the back door to the business open. Once I made it to the jeep, I observed several boxes of brass fittings inside. I also observed a silhouette of a subject inside the business reflecting off the



light from a coke machine as it moved. While standing beside the jeep I could see the subject start walking toward the door with an unknown object in his hands. I then positioned myself behind several crates outside to the left of the door. The black male subject then exited the building with two white boxes of brass fittings. I then started to give my standard K-9 warnings three times at which time the subject dropped the property and attempted to flee back inside the business. At this time my K-9 partner Zak was released due to the subject refusing to comply with the warnings. Zak engaged the subject on his left arm before he was able to make it back inside the business. During this time the subject began to strike and pull away from Zak causing him to engage and bite the subject's right arm. The subject was then told several times to stop fighting with Zak and to lie down on the ground. The subject then complied and lay on the ground. I then gave the command to Zak to return to his handler. Once I gave the command, Zak disengaged and the subject was taken into custody and identified as black male Louis Earl Miles, Jr. DOB 7/15/63 Address of 4567 Lonesome Pine Drive. Medics were called and Unit 91 responded to treat the puncture wounds that he had received. He was transported by patrol to Jackson Hospital for further treatment.

Attached is a copy of the memorandum issued to Lieutenant E.L. Johnson about the arrest of Louis Miles on September 10, 2007. (Attached hereto as Exhibit A.)

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

Further Affiant saith not.

Corporal W.B. Dickey #1521

Corporal W.B. Dickey

**SWORN to and SUBSCRIBED before me this the 7th day of December, 2007.**

[signature]

Notary Public

My commission expires 10/14/09

# Memorandum

To: Lieutenant E.L. Johnson # 367

From: Corporal W.B. Dickey # 1521

Date: September 10, 2007

Subject: Arrest of B/M Louis Miles for Burglary 3rd

On September 10, 2007 at 0126 hours this Unit #149 (Dickey/Zak) was dispatched to 3996 Birmingham Highway, Main Line Supply Company, in reference to a business alarm with front beam and back door as the indication. Upon arrival, I observed that the sliding gate leading to the rear of the property was partially opened and the pad lock had been cut in half. While standing on the east side of the building waiting for back up to arrive, I heard several noises coming from inside the business. I then made my way to the back of the business and observed a teal colored Jeep Cherokee, tag 3B1142N, near the rear door with its back tailgate hatch open and the back door to the business open. Once I made it to the Jeep I observed several boxes of brass fittings inside, I also could see a silhouette of a subject inside the business reflecting off the light from a coke machine as they moved. While standing beside the Jeep I could see the subject start walking towards the door with an unknown object in his hands. I then positioned myself behind several crates outside to the left of the door. The black male subject, wearing a black button up shirt and blue jeans, then exited out of the business with two white boxes of brass fittings. I then started to give my standard K-9 warnings three times at which time the subject dropped the property and tried to flee back inside the business. It was at this time my K-9 partner Zak was released due to the subject refusing to comply with the warnings. K-9 Zak engaged the subject on his left arm before he was able to make it back inside the business. During this time the subject began to strike and pull away from the Zak causing him to engage the subject's right arm. The subject was then told several times to stop fighting with my partner and to lie down on the ground. The subject complied with the demands to lie down on the ground and my partner was then given the commands to return to his handler. Once the commands were given, Zak disengaged The subject was then taken into custody and identified as B/M Louis Earl Miles Jr., 07-15-1963 (44), of 4567 Lonesome Pine Drive. Medic Unit 91 responded to treat the suspect's injuries, puncture wounds to both arms. He was then transported by patrol to Jackson Hospital for further treatment. Unit #140 (Lt. Johnson) and Property Detectives responded to the scene.

Cpl. W.B. Dickey #1521

Cpl. W.B. Dickey #1521

DEFENDANT'S EXHIBIT A

# Emergency Medical Run Report

☐ NON-EMERGENCY ☐ D.C.L.

| Incident Date | Incident # | Run # | Service Name | State ID # | Unit # / Shift | Canceled By |
|---|---|---|---|---|---|---|
| 9/19/07 | 21508 | 172 | MFD | 373 | K-9 / 1/3 | |

Call Location: 3996 B'Ham Hwy. | Call Type: medical

Patient Info

Name: Louis Miles | Age: 44 | D.O.B.: 9-15-63 | Gender: M

Address: 4567 Lonesome Road | SSN # | Race: B

City, State Zip | Phone

Call Method: 911 / Telephone / Private / Police Department / Sheriff Office / State Trooper

| TIMES | |
|---|---|
| Call Received | 154 |
| Dispatched | |
| Enroute | 154 |
| Location / On Scene | 205 |
| Transport | |
| Destination \ Hospital | |
| In Service | 225 |

Mileage: Miles To Scene | Miles From Scene

Medical History

Current Medications: ☐ Brought With Patient ☑ None ☐ List Attached ☐ Unknown

Allergies: ☑ None ☐ Unknown

Medical History: None, Allergies, Asthma, Cardiac, COPD, Diabetes, ✓ HTN, Resp. Fail, Other, Unknown, AMS/Behav, Cancer, CHF, CVA, Drug / Alch, Renal Fail, Seizure, Other

Run Info

Chief Complaint: Dog bites

| AVPU Scale | Speech | Skin | Color | Respirations | Pulse | Pupils |
|---|---|---|---|---|---|---|
| ✓ Alert | ✓ Coherent | ✓ Normal | ✓ Normal | ✓ Normal | ✓ Normal | ✓ P.E.A.R.L. |
| Voice | Incoherent | Moist | Cyanotic | Crowing | Rapid | Dilated L / R |
| Pain | Hysterical | Dry | Pale | Distressed | Slow | Fixed L / R |
| Unresponsive | Slurred | Hot | Flushed | Irregular | Regular | Unequal L / R |
| Combative | Silent | Cool | Ashen | Absent L / R | Irregular | Pinpoint L / R |
| Deceased | Abusive | Other | Jaundice | Other | Weak, Thready | Sluggish L / R |
| Other | Other | | Other | | Absent | Blind L / R |

| TIME | PULSE | RESP | SAO2 | BLOOD PRESSURE Systolic | Diastolic | Procedure | Medication / IV Solution | Route | Dosage / Rate | Medic 1/2/3/4 | Notes / Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 206 | 117 | 20 | 99 | 160 | 100 | | | | | | |

NARRATIVE

Upon arrival, found pt in PD custody. Pt. had several small lacerations and punctures on left arm from K-9 unit. Took vitals which were stable. Wrapped wounds & controlled bleeding. ~~Trans~~ JR Left pt in PD custody to be transferred to hospital. Pt. will need stitches.

COPY

PERSON RECEIVING PATIENT | DATE

X

AUTHORIZING PHYSICIAN | DATE

MEDICAL CONTROL #

PATIENT DISPOSITION: ☐ P.O.V. ☐ REFUSED ☐ AMBULANCE / E ☐ AMBULANCE / NON E ☐ HEARSE / DFS ☐ OTHER ☐ NONE

TRANSPORTED BY / TO: PD / JAIL

PATIENT OUTCOME: ☐ IMPROVED ☐ NO CHANGE ☐ DETERIORATED

CREW MEMBER 1: [signature] NUMBER: 525157

CREW MEMBER 2: [signature] NUMBER: 220114

CREW MEMBER 3: NUMBER

CREW MEMBER 4: NUMBER

I HAVE RECEIVED A COPY OF THIS AGENCIES PRIVACY POLICY

SIGNATURE | DATE

THIS IS TO CERTIFY THAT I AM REFUSING TREATMENT / TRANSPORT AND HAVE BEEN INFORMED OF THE RISKS OF DOING SO.

DEFENDANT'S EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **LOUIS E. MILES, JR.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **2:07-CV-950-MHT** |
| **MONTGOMERY CITY POLICE DEPT., et al.,** | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF DETECTIVE M. McCORD**

**STATE OF ALABAMA** )

**COUNTY OF MONTGOMERY** )

Before me, a Notary Public in and for said State and County, personally appeared M. McCord and, after first being duly sworn by me, did depose and state as follows:

My name is M. McCord and I am over nineteen (19) years of age. I am currently employed as a Detective with the Montgomery Police Department, and assigned to the Detective Division.

On September 10, 2007, a State Incident Offense Report was completed by Jeffrey King on behalf of Main Line Supply, Inc. for Burglary in the 3rd Degree. King reported that assorted brass fittings and a Stihl power saw were stolen from the business.

I served the warrant on Miles while he was being held in the Montgomery Municipal Jail. After I served him with the warrant, I escorted Miles from the City Jail to the Detective Division. While Miles was in the Detective Division I read him his Miranda Rights and he voluntarily gave a digital statement confessing to the offense. Miles stated that he cut the lock on the gate and drove around to the back of the business. He stated that he used a pry tool to open the rear exterior door to the building. Miles then admitted to removing several boxes of brass fittings and a power saw and placing them in his vehicle. The tools used in the offense were impounded into evidence. Jeffrey

DEFENDANT'S
EXHIBIT
3
tabbies

King secured warrants against Miles for Burglary in the 3rd Degree and Theft of Property in the 1st Degree. Miles was then taken to booking to be processed and placed in the Montgomery Municipal Jail on four outstanding capiases with a hold for the Montgomery County Detention Facility.

At the end of Miles's confession, he stated that he needed medical treatment. However, I was advised that he had just returned from the hospital where his injuries were treated and wrapped, and I was taking him to the jail immediately thereafter, where any necessary medical needs are provided for.

I was not present at the time Miles was taken into custody.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

Further Affiant saith not.

[signature]
Detective M. McCord

**SWORN to and SUBSCRIBED before me this the 5th day of December, 2007.**

[signature]
Notary Public

My commission expires 7-10-2010

NURSES NOTES

Miles Louis [illegible] 2/15/63

| DATE | NOTES |
|---|---|
| 6/6/07 | BP 161/116 |
| 6/7/07 | Seen by Dr. [illegible] [illegible] [illegible] [illegible] |
| 9/11/07 | [illegible] inmate received [illegible] [illegible] from [illegible] to left posterior arm and lower forearm [illegible] to upper and lower arm and several [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] to left lower leg [illegible] cleansed c $H_2O_2$ [illegible] [illegible] applied covered c telfa dressing [illegible] [illegible] left arm covered c 4x4's and wrapped [illegible] at intact [illegible] |

DEFENDANT'S EXHIBIT 4 tabbies

334-293-8000
Montgomery, AL 36106

*ED CARE
STEVE AVEZZANO MD
DEA No: BA4054211
License No: AL18250

Patient Name: MILES, LOUIS
Patient Address: 621 COLUMBUS STREET
MONTGOMERY, AL 36104

Date: 09/10/2007

Augmentin 875 mg PO BID

Qty: 14

Refill (NR) 1 2 3 4 5 Void After

1 - 24
25 - 49
50 -74
75 - 100
101 - 150
151 and over

Dispense as Written

May Substitute

Prescription is void if more than one (1) prescription is written per blank.

VOID

1725 Pine St
334-293-8000
Montgomery, AL 36106

*ED CARE
STEVE AVEZZANO MD
DEA No: BA4054211
License No: AL18250

Patient Name: MILES, LOUIS
Patient Address: 621 COLUMBUS STREET
MONTGOMERY, AL 36104

Date: 09/10/2

Lortab 5 mg 1 or 2 tablet PO [Q 4-6H prn pain]

Qty: 20

Refill (NR) 1 2 3 4 5 Void After

1 - 24
25 - 4
50 -74
7
10
151 ar

Dispense as Written

May Substitute

Prescription is void if more than one (1) prescription is written per blank.

VOID

Jackson Hospital
1725 Pine St
Montgomery, AL 36106
334-293-8000

# DISCHARGE INSTRUCTIONS

| Patient Name: Miles, Louis | Visit Date: 09/10/2007 02:49 |
|---|---|

You were treated today by :

**STEVE AVEZZANO MD**

**ADDITIONAL FOLLOWUP INSTRUCTIONS**

Arrange for a follow up appointment with patient's own Primary Care Provider in 3-5 days or immediately if your symptoms get worse.
Other follow up instructions: Sutures out in 10 days..

**DISCHARGE INSTRUCTIONS**

**ANIMAL BITES**

Your exam shows you have been bitten by an animal. These wounds can become infected, even when they seem minor at first. This is especially true for bite wounds of the hand. Cat bites are especially prone to infection. Please rest and elevate your injured part above the level of your heart until the swelling and pain are better. If you have been prescribed an antibiotic, be sure to take all your medicine. Bulky dressings or splints applied to protect your wound should do not remove it until your doctor approves. You may need a tetanus shot if you have not had a booster within the past 5 years. Call your doctor or go to the emergency room right away if you think your wound is infected. Signs of infection include:
*Increased redness, swelling, or pain.
*Pus drainage from the wound or red streaks going up the arm or leg.
*Difficulty moving the joints near the bite wound. Certain animals can carry rabies: dogs, cats, monkeys, bats, skunks, coyotes, foxes, wolves, and raccoons. Rodents, including squirrels, do not carry rabies. Animals that are ill from rabies will act strangely and often attack for no reason. You may need shots to protect you from rabies. If the animal that bit you has not had rabies shots, and it cannot be quarantined for 10 days, then rabies prevention shots may be required to protect you from this potentially fatal disease. Contact your local animal control department to report your injury.

**SUTURED WOUND CARE**

Your cut has been cleaned and closed with sutures, also called stitches. You should keep the area around your wound clean and dry until the stitches are removed. Rest and elevate the injured area until all the pain and swelling are gone. If a dressing has been applied, it should be removed in 2 days. See your doctor or return here for stitch removal in 10 days. Call your doctor or the emergency department right away if you think your wound is infected. These include:
*Unusual redness or swelling around the wound.
*Increasing pain and tenderness.
*Pus drainage.
*Red streaks going up the arm or leg. After your cut has begun to heal, you may leave it open to the air. You can clean the stitch line 1-2 times a day with soap and water. However, be careful not to soak the area in water for long periods. Please wear a dressing to protect your injury while you are at work. Use a sunscreen on your wound for the next 3-6 months to reduce pigment forming in the scar. You may need a tetanus booster if you have not had one within 5 years.

Jackson Hospital
1725 Pine St
Montgomery, AL 36106
334-293-8000

# DISCHARGE INSTRUCTIONS

| Patient Name: Miles, Louis | Visit Date: 09/10/2007 02:49 |
|---|---|

**CUSTOM INSTRUCTIONS**

There are multiple lacerations with a total estimated length of 8 involving the following areas: left upper arm and biceps, volar aspect of left forearm, right wrist and volar aspect of left wrist Sutures to this wound should be removed in 10 days.

---

# MONTGOMERY MUNICIPAL JAIL
## BOOKING SHEET

| ORI #: AL0030100 | PRISONER TYPE: CITY PRIS | JACKET #: 000013858 | BOOKING #: 200700007088 |
|---|---|---|---|
| | | NAME: MILES, LOUIS, EARL, JUNIOR | |
| | | SSN: 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 | DOB: 07/15/1963 |
| | | RACE: BLACK | SEX: MALE |
| | | HEIGHT: 6'00" | WEIGHT: 200 |
| | | LICENSE: F006989 | STATE: ALABAMA |

## CHARGES

1. COMM. DRIVING WHILE SUSP, REV, CANC
2. COMM. DRIVING WHILE SUSP, REV, CANC
3. COMM. IMPROPER TAG
4. COMM. IMPROPER TAG
5. COMM. OTHER TRAFFIC VIOLATIONS
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.

## CHARGES

16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.

**Montgomery Police Department** **BK0100S1**

Booking Records Maintenance BK0110S2

ORI#: **AL0030100** MPD Booking #: **2007-00007088** **Change**

Inmate . . . . . : **MILES,LOUIS,EARL,JR**
Jacket # . . . . : **13858 A** **Black** **Male** DOB : **07/15/1963**
Social Sec.# . : **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** Drv Lic#: **F006989** State: **AL**

Book Date/Time : **9102007** **70839** Shift . . . . . : **1** + 1st Shift
Prisoner Type : **CTYP** + City Pris Inmate Number :
Incarceration : **A** + Arrest,Mis Custody Class : **1** + CustStand

Booking ID #1 : **1500** + MARSHA Booking ID #2 : +
Finger Print By: + Deloused By . : +
Searched By #1 : **1165** + BESTED Searched By #2 : +
Strip Search #1: **1165** + BESTED Strip Search #2: +
Reviewed By ID : + Mug Shot By ID : +
Photo Number . : Taken By ID . : +
Phone Calls? . : **Y** (Y=Yes, N=No) Housed For ORI : +

**F8=Chg/Hlds F9=Inm. Act. F10=Jacket F14=Ques F15=Notify F16=Class**
**F18=Housing F19=Warrant F21=Poss. F22=Addl F23=Suicide Wtch F24=Doc**
F3=Exit F4=Prompt F6=Print F12=Cancel

**CITY OF MONTGOMERY**
**STATE OF ALABAMA**

Booking Date & Time: **09/10/2007** BOOKING NUMBER: **000070882007**

NAME: **MILES,LOUIS,EARL,JR**

RACE: **Black** SEX: **Male** DOB: **07/15/1963** SSN: **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**

ADDRESS: **4567 LONESOME PINE DR**

| | | |
|---|---|---|
| 1 | COMM. DRIVING WHILE SUSP, R | N0882901 |
| 2 | COMM. DRIVING WHILE SUSP, R | N0886918 |
| 3 | COMM. OTHER TRAFFIC VIOLATI | N0886919 |
| 4 | COMM. IMPROPER TAG | N0882902 |
| 5 | COMM. IMPROPER TAG | N0886917 |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |

Booked in @ 7:08 AM
Rel

Release Inmate Maintenance BK0200S1

Facility : Block . :
Cell . . : Bed . . :

Booking #: **AL0030100 2007-00007088**
Inmate . : **MILES,LOUIS,EARL,JR**
Jacket . : **13858 A Black Male** D.O.B.: **07/15/1963**
Soc. Sec#: **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** Drv Lic#: **F006989 AL**
Charge . : **AL0030100 COMM. DRIVING WHILE SUSP, REV, CANC** #: **000**

Release Date : **9/11/2007** Time . . . . : **20:43:42**
Released By : **361** + WELCH Inmate Status : ____ +
Reason . . . : **RBYC** + Rel By Ct To ORI # . . : ________ +
To Whom/Facil: ________________ ____ +
Ovr Password : Ovr Reason . : **TRF** +
Print Invoice: **Y** (Y/N)

**F8=Charges F9=Inmate Activity F10=Jacket Info F13=Delete Release**
**F14=Questions F15=Fund Ledger F20=Override F21=Poss. F24=Docs**
F3=Exit F4=Prompt F12=Cancel

**CITY OF MONTGOMERY**
**STATE OF ALABAMA**

Booking Date & Time: **09/10/2007** BOOKING NUMBER: **000070882007**

NAME: **MILES,LOUIS,EARL,JR**

RACE: **Black** SEX: **Male** DOB: **07/15/1963** SSN: **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**

ADDRESS: **4567 LONESOME PINE DR**

| | | |
|---|---|---|
| 1 | COMM. DRIVING WHILE SUSP, R | N0882901 |
| 2 | COMM. DRIVING WHILE SUSP, R | N0886918 |
| 3 | COMM. OTHER TRAFFIC VIOLATI | N0886919 |
| 4 | COMM. IMPROPER TAG | N0882902 |
| 5 | COMM. IMPROPER TAG | N0886917 |

LOUIS MILES
DOB: 07/15/63

06/07/07: City: Here today complaining of flu-like symptoms and
hypertension. He was diagnosed with hypertension in the last six months of
his prison incarceration but he said he never took the medications, but he
wants to take it now. He does not know what he was prescribed since he
never took it.

PE: Afebrile. BP 144/94. Pulse 88. Resp. 16. Heart regular. Lungs are
clear. Neuro grossly WNL.

A: and P:
1. Hypertension – started the patient on LISINOPRIL 10 mg one p.o.
   daily. Advised him to check his blood pressure daily. He is
   leaving in 7-days. Advised him to see his family doctor as soon as
   he leaves here.
2. Flu-like symptoms. TYLENOL two p.o. t.i.d. x 7 days.


Marcial J. Mendez, M. D.
Montgomery City Jail

## *Montgomery Municipal Jail*

### *Physicians' Order*

NAME: Miles Louis D.O.B. 7/15/63

SIG. Lisinopril 10mg po daily x 7 days
Tylenol 2 tabs po tid x 7 days

DATE: 6/7/07 Physician Signature:

SIG.

DATE: Physician Signature:

SIG.

DATE: Physician Signature:

SIG.

DATE: Physician Signature:

DOCTORS PROGRESS NOTES

NAME Niles, Lewis

DOB 7/15/63

NKDA

| DATE | CLINICAL RECORDS/DOCTORS PROGRESS NOTES |
| --- | --- |
| 8/7/07 | See evaluation |
| | 144/94 - HTN |
| | Lisinopril 10 mg T PO daily x 7 d |
| | Tylenol TT PO TID x 7 d PRN |
| | pain / malaise |
| | No added salt |
| | [illegible] |

# MEDICATION ADMINISTRATION RECORD

Rol 6/13/07

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lisinopril 10mg 6/7/07 i po daily | 0500 | | | | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 6/7/07 x 7 days Tylenols #II Po tid | 0500 | | | | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | | | | | | | | | | | | | | | | | | | |
| | 0(1)00 | | | | | | | | | | [illegible] | [illegible] | | | | | | | | | | | | | | | | | | | | |
| | 1700 | | | | | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | | | | | | | | | | | | | | | | | | | |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | | |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | | | | | | | | | | | |

CHARTING FOR THROUGH

Physician

Telephone No.

Medical Record No.

Alt. Physician

Alt. Telephone

Allergies

Rehabilitative Potential

Diagnosis

Medicaid Number

Medicare Number

Approved By Doctor:

By: Title: Date:

RESIDENT Miles, Louis

D.O.B. 9/x/65

Sex M

Room #

Patient Code

Admission Date

REORDER FROM INTEGRAL SOLUTIONS GROUP 800-235-0767

SPECIAL A-55

| VITAL SIGNS | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TEMPERATURE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PULSE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RESPIRATION | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| BLOOD PRESSURE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| WEIGHT | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

DAY SHIFT color ink - EVENING SHIFT color ink - NIGHT SHIFT color ink -

| DATE | TIME GIVEN | MEDICATION & DOSAGE | INJ SITE | REASON | RESULTS OR RESPONSE | TIME NOTED | NURSE'S SIGNATURE / TITLE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| INITIALS | NURSE'S SIGNATURE | INITIALS | NURSE'S SIGNATURE | INITIALS | NURSE'S SIGNATURE |
|---|---|---|---|---|---|
| [illegible] | [illegible] Rodgers, LPN | | | [illegible] | [illegible] |
| | | | | | |
| M. | M. Motley, LPN | | | | |

INSTRUCTIONS:

A. INITIAL APPROPRIATE BOX WHEN MEDICATION OR TREATMENT IS GIVEN.
B. CIRCLE INITIALS WHEN MEDICATION OR TREATMENT IS REFUSED.
C. INDICATE INJECTION SITE WITH APPROPRIATE CODE.
D. STATE REASON FOR REFUSAL UNDER MEDICATION NOTES.
E. STATE REASON AND RESULT FOR PRN MEDICATION OR TREATMENT.

INJECTION SITE CODES:

1. RIGHT DORSAL GLUTEUS
2. LEFT DORSAL GLUTEUS
3. RIGHT VENTRAL GLUTEUS
4. LEFT VENTRAL GLUTEUS
5. RIGHT LATERAL THIGH
6. LEFT LATERAL THIGH
7. RIGHT DELTOID
8. LEFT DELTOID
9. RIGHT UPPER ARM
10. LEFT UPPER ARM
11. RIGHT ANTERIOR THIGH
12. LEFT ANTERIOR THIGH
13. UPPER BACK LEFT
14. UPPER BACK RIGHT
15. UPPER CHEST LEFT
16. UPPER CHEST RIGHT
17. TO RIGHT AND ABOVE LEVEL OF UMBILICUS
18. TO LEFT AND ABOVE LEVEL OF UMBILICUS
19. TO RIGHT AND BELOW LEVEL OF UMBILICUS
20. TO LEFT AND BELOW LEVEL OF UMBILICUS